IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 13-00021 SOM (04) |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT |
| | ) | ROCHELLE PHILLIPS'S MOTION |
| | ) | FOR COMPASSIONATE RELEASE |
| | ) | |
| vs. | ) | |
| | ) | |
| ROCHELLE PHILLIPS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT ROCHELLE PHILLIPS'S
MOTION FOR COMPASSIONATE RELEASE**

**I.      INTRODUCTION.**

Defendant Rochelle Phillips entered a guilty plea and was subsequently convicted of drug crimes. She is serving a 120-month prison sentence and has a scheduled release date of July 19, 2021. In seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A), Phillips relies primarily on the COVID-19 pandemic. Because she fails to demonstrate an extraordinary and compelling reason warranting a sentence reduction, her motion is denied.

**II.     BACKGROUND.**

In March 2014, this court sentenced Phillips to 120 months of imprisonment, 5 years of supervised release, and a $300 special assessment with respect to her drug crimes involving significant amounts of drugs, including 1,450.89 grams of "ice,"

2,721.6 grams of marijuana, and 559.91 grams of generic methamphetamine.  *See* ECF Nos. 259, 261, and 263, PageID # 1050.

Phillips, who is 40, is at FMC Lexington in Kentucky. Her projected release date is a little more than half a year from now.  *See* ECF No. 391-1, PageID # 1765; https://www.bop.gov/inmateloc/ (input Register Number 15327-022) (last visited January 15, 2021).

FMC Lexington houses 1,110 male and female inmates, with 171 in its camp, where Phillips is housed.  *See* ECF No. 391, PageID # 1749; https://www.bop.gov/locations/institutions/lex/ (last visited January 15, 2021).  As of the morning of January 15, 2021, FMC Lexington and its camp have an extensive COVID-19 problem, with 439 active cases of COVID-19 in its inmate population and 11 active cases of COVID-19 in its staff.  FMC Lexington and its camp have had 290 inmates and 57 staff members recover from COVID-19.  Nine inmates but no staff have died at the facility.  *See* https://www.bop.gov/coronavirus/index.jsp (last visited January 15, 2021).  It is not clear how many people at the camp in which Phillips is incarcerated have had COVID-19, as the numbers published on the BOP website combine the totals for the FMC and its camp and do not break down the numbers by gender.

Phillips does not claim to have any medical condition that puts her at risk of a severe case of COVID-19.  She

contracted COVID-19 in December 2020 and was asymptomatic.  *See* ECF Nos. 391-1, PageID # 177, 392-1, PageID # 1801, and 393-2, PageID # 1818.

**III.    ANALYSIS.**

Phillips's compassionate release request is governed by 18 U.S.C. § 3582(c)(1)(A), which provides:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

In other words, for the court to exercise its authority under § 3582(c)(1)(A), it must (1) find that the defendant exhausted her administrative remedies or that 30 days have passed since she filed an administrative compassionate relief request; (2) also find, after considering the factors set forth in section 3553(a), that extraordinary and compelling reasons warrant a sentence reduction; and (3) find that such a reduction is consistent with

the Sentencing Commission's policy statements. *United States v. Scher*, 2020 WL 3086234, at *2 (D. Haw. June 10, 2020).

### A. Phillips Has Satisfied the Time-lapse Requirement of 18 U.S.C. § 3582(c)(1)(A).

The Government argues that the exhaustion requirement is jurisdictional and that Phillips failed to exhaust her prison remedies, stating that the Bureau of Prisons could find no record that Phillips made a compassionate release request to her warden. However, this court has already stated that it views the exhaustion prerequisite as a statutory claims-processing requirement, not a matter of subject matter jurisdiction. *See United States v. Drummondo-Farias*, 2020 WL 2616119, at *3 (D. Haw. May 19, 2020). Moreover, although counsel explained that a copy was not attached to the motion because counsel did not have a copy of it, a copy of the November 16, 2020, request to the warden was attached to the Reply. *See* ECF No. 393-1, PageID # 1816. Also attached to the reply is an email from "LEX-ExecAssistant-S@bop.gov" that confirms receipt of the request. *See* ECF No. 393-2, PageID # 1818.

While Phillips's original pro se motion was filed with this court before she had requested relief from her warden, the court appointed counsel for her, and, by the time her counsel filed the permitted supplemental motion, more than 30 days had elapsed from the request to the prison warden. This court counts

the time from counsel's filing and finds that Phillips has fulfilled the first requirement of § 3582(c)(1)(A).

> **B. This Court Has Discretion in Determining Whether Extraordinary and Compelling Reasons Justify a Reduced Sentence.**

This court turns to § 3582(c)(1)(A)'s second requirement: whether extraordinary and compelling reasons warrant a sentence reduction. In orders addressing compassionate release motions in other cases, this court has expressly recognized that it possesses considerable discretion in determining whether a particular defendant has established the existence of extraordinary and compelling reasons that justify early release. This court has also stated that, in reading § 3582(c)(1)(A) as providing for considerable judicial discretion, the court is well aware of the absence of an amended policy statement from the Sentencing Commission reflecting the discretion given to courts when Congress amended the statute to allow inmates themselves to file compassionate release motions. *See United States v. Apao*, 2020 WL 6700133 (D. Haw. Nov. 13, 2020); *United States v. Mau*, 2020 WL 6153581 (D. Haw. Oct. 20, 2020); *United States v. Scher*, 2020 WL 3086234, at *2 (D. Haw. June 10, 2020); *United States v. Cisneros*, 2020 WL 3065103, at *2 (D. Haw. Jun. 9, 2020); *United States v. Kamaka*, 2020 WL 2820139, at *3 (D. Haw. May 29, 2020).

Specifically, this court has recognized that an Application Note to a relevant sentencing guideline is outdated.

This court continues to view its discretion as not limited by Sentencing Commission pronouncements that are now at odds with the congressional intent behind recent statutory amendments. *See Mau*, 2020 WL 6153581; *see also United States v. Brooker*, 976 F.3d 228, 235-36 (2d Cir. 2020) ("[W]e read the Guideline as surviving, but now applying only to those motions that the BOP has made."); *cf. United States v. Ruffin*, 978 F.3d 1000, 1007-8 (6th Cir. 2020) (noting that some courts have held that the Application Note is not "applicable," but not deciding the issue).

### C. Phillips Has Not Demonstrated Early Release Is Appropriate.

Phillips contends that extraordinary and compelling circumstances justify her early release. She relies on the lack of a halfway house in Hawaii and the COVID-19 virus, which is present at FMC Lexington, where she is housed. Neither is persuasive.

#### 1. The Lack of a Halfway House is not an Extraordinary and Compelling Circumstance.

In Phillips's pro se motion of November 9, 2020, she complains about the lack of a halfway house in Hawaii. Given the absence of a halfway house, Phillips argues that she should be released to home confinement. *See* ECF No. 382. Phillips fails to demonstrate that the lack of a halfway house in Hawaii is an extraordinary and compelling circumstance justifying her release.

> Under 18 U.S.C. § 3624(c)(1),
>
> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
>
> Under 18 U.S.C. § 3624(c)(2),
>
> The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph.

These subsections do not mandate Phillips's release to a halfway house or to home confinement. First, § 3624(c)(1) requires only that, "to the extent practicable," Phillips spend a portion of the final months of her sentence "under conditions that will afford [her] a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." Second, § 3624(c)(2) authorizes, but does not require, the BOP to place Phillips in home confinement. "Nothing in § 3624(c) indicates any intention to encroach upon the Bureau's authority to decide where the prisoner may be confined during the pre-release period." *Prows v. Fed. Bureau of Prisons*, 981 F.2d 466, 469 (10th Cir. 1992).

The Ninth Circuit has held that 18 U.S.C. § 3624 does not require all prisoners to be considered for placement or actually placed in a re-entry confinement center or halfway house.  *See United States v. Laughlin*, 933 F.2d 786, 789 (9th Cir. 1991) ("Nothing in the language of section 3624(c) mandates that all prisoners pass through a community treatment center en route to a free society.").  In *Lauglin*, the defendant argued that "the government's failure to coordinate his release through a community treatment center violated 18 U.S.C. § 3624(c)."  *Id.*  In rejecting that argument, the Ninth Circuit noted that the BOP could consider an array of options under the statute.  *Id.*  Accordingly, this court has stated that it does not read 18 U.S.C. § 3624(c) as requiring the BOP to consider a defendant for residential reentry center or halfway house placement, as the statute allows the BOP to consider a range of options, "to the extent practicable."  *See Veloria v. McGrew*, 2008 WL 2736033, at *3 (D. Haw. July 11, 2008).

Moreover, once a defendant has been sentenced to a term of imprisonment, he or she is "committed to the custody of the Bureau of Prisons until the expiration of the term imposed."  18 U.S.C. § 3621(a).  The BOP is charged with designating "the place of the prisoner's imprisonment."  18 U.S.C. § 3621(b).  Federal courts have long held that § 3621(b) gives the executive branch through its designee, the BOP, authority to determine a

defendant's place of confinement.  A court cannot order the BOP to house an individual in any particular location.  *See United States v. Dragna*, 746 F.2d 457, 458 (9th Cir. 1984); *see also United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011).  While that certainly does not mean the court is forced to deny compassionate release, this court notes that Phillips has not established in the record that, but for the absence of a halfway house in Hawaii, she would be released from prison early.  For example, she does not establish that she is ineligible for release to a halfway house near FMC Lexington.

### 2. Phillips Does Not Show Other Reasons Justifying Early Release.

According to the CDC, a person's risk of a severe illness (one that may require hospitalization, intensive care, or a ventalator) from COVID-19 increases with age.  The CDC website explains that "people in their 50s are at higher risk for severe illness than people in their 40s.  Similarly, people in their 60s or 70s are, in general, at higher risk for severe illness than people in their 50s.  The greatest risk for severe illness from COVID-19 is among those aged 85 or older." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited January 11, 2021).  Phillips is 40.

The CDC currently lists the following conditions for people of any age as creating an increased risk of a severe illness from COVID-19:

*Cancer

*Chronic kidney disease

*COPD (chronic obstructive pulmonary disease)

*Down Syndrome

*heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies

*Immunocompromised state (weakened immune system) from solid organ transplant

*Obesity (body mass index [BMI] of 30 kg/m2 or higher but < 40 kg/m2)

*Severe Obesity (BMI ≥ 40 kg/m2)

*Pregnancy

*Sickle cell disease

*Smoking

*Type 2 diabetes mellitus

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited January 14, 2021).

The CDC also lists the following as possibly increasing the risk of a severe illness from COVID-19:

*Asthma (moderate-to-severe)

>    *Cerebrovascular disease (affects blood vessels and blood supply to the brain)
>
>    *Cystic fibrosis
>
>    *Hypertension or high blood pressure
>
>    *Immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines
>
>    *Neurologic conditions, such as dementia
>
>    *Liver disease
>
>    *Overweight (BMI > 25 kg/m2, but < 30 kg/m2)
>
>    *Pulmonary fibrosis (having damaged or scarred lung tissues)
>
>    *Thalassemia (a type of blood disorder)
>
>    *Type 1 diabetes mellitus

*Id.*

Phillips presents no evidence that she is at increased risk of a severe case of COVID-19.  Instead, she argues that the number of prisoners at her facility who have COVID-19 increases her risk of a severe case of it.  This argument, without more, does not persuade this court that early release is warranted in this case.  Taking the argument to its logical conclusion, everyone at FMC Lexington should be released immediately.  This might be a good social policy, but it appears to this court to go beyond what Congress intended.

In fact, Phillips's risk of contracting COVID-19 might be lower than that of other inmates at FMC Lexington.  Most

notably, Phillips tested positive for COVID-19 in December 2020 and does not claim to have had a severe case of the disease. That raises two issues.

First, if she did not develop complications during her December infection, it is not clear whether she will likely develop complications if reinfected.  *See* Richard L. Tillett, et al, *Genomic Evidence for Reinfection with SARS-CoV-2: a Case Study*, Oct. 12, 2020, https://www.thelancet.com/journals/laninf/article/PIIS1473-3099(20)30764-7/fulltext (noting that, in a reinfection of a Nevada man, his symptoms were more severe, but also recognizing that in other cases of possible reinfection, there was no difference in the severity of symptoms).  There is no way for this court to know whether Phillips's test was a false positive, but, if the test was accurate, it appears that she may have survived the virus without developing serious complications.

Second, this court cannot conclude that there is a substantial risk that Phillips will be reinfected.  There is anecdotal evidence that a handful of people have been reinfected with COVID-19.  *See id.* (discussing a Nevada man who appears to have been reinfected with COVID-19); Nate Wood, *Nevada lab confirms 1st coronavirus reinfection in the US*, ABC News, Aug. 28, 2020, https://abcnews.go.com/Health/nevada-lab-confirms-1st-coronavirus

-reinfection-us/story?id=72691353 (same); Maura Hohman, *COVID-19 reinfection: Can you get coronavirus twice? What does reinfection mean?*, Today, Sept. 10, 2020, https://www.today.com/health/covid-19-reinfection-can-you-get-coronavirus-twice-what-does-t190764 (reporting that 4 people have been reinfected). For example, there are reports that "[a] Hong Kong man who was initially infected with the coronavirus in March and made a full recovery was reinfected more than four months later after a trip abroad." Adam Taylor and Ariana Eunjung Cha, *First Coronavirus Reinfection Documented in Hong Kong, Researchers Say*, Washington Post, August 24, 2020, https://www.washingtonpost.comhealth/2020/08/24/coronavirus-reinfection-hong-kong/. The CDC recognizes that "Cases of reinfection of COVID-19 have been reported but are rare. In general, reinfection means a person was infected (got sick) once, recovered, and then later became infected again. Based on what we know from similar viruses, some reinfections are expected." https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/quarantine.html (last visited January 11, 2021).

  Moreover, individuals may have at least some immunity against future infection, although the strength and length of that immunity has not been established. *See* https://www.nytimes.com/2020/08/14/world/covid-19-coronavirus.html#link-10cd68e7 (last visited September 23, 2020); *see also*

13

Dennis Thompson, *COVID-19 Immunity Might Last at Least 8 Months* (Dec. 31, 2020), https://consumer.healthday.com/1-4-covid-19-immunity-might-last-at-least-8-months-study-2649661098.html; Apoorva Mandavilli, *You May Have Antibodies After Coronavirus Infection.  But Not for Long*, N.Y. Times, June 18, 2020, https://www.nytimes.com/2020/06/18/health/coronavirus-antibodies.html (indicating that COVID-19 antibodies may only last 2 to 3 months) (last visited September 23, 2020)).  Additionally, it is unclear how quickly mutations of the virus may spread, and they may be controllable with existing vaccines.  *See Why New Coronavirus Mutations May Not Spread as Fast as You Fear* (Jan. 4, 2021), https://this.kiji.is/718708789861793792?c=592622757532812385.

However, other articles have indicated that individuals infected with COVID-19 are likely to remain immune even after their antibody count drops.  These articles indicate that the body might retain immunological memory that allows it to quickly produce new antibodies to respond to a second infection.  Additionally, the remaining antibodies might even be sufficient to knock off COVID-19.  "A decline in antibodies is normal after a few weeks, and people are protected from the coronavirus in other ways."  Apoorva Mandavilli, *Can You Get COVID-19 Again? It's Very Unlikely, Experts Say*, N.Y. Times, July 22, 2020,

14

https://www.nytimes.com/2020/07/22/health/covid-antibodies-herd-immunity.html; *see also* Martin Finucane, *Here's What You Need To Know About Fading Coronavirus Antibodies*, Boston Globe, July 23, 2020, https://www.bostonglobe.com/2020/07/23/nation/heres-what-you-need-know-about-fading-coronavirus-antibodies/.

This court is acutely aware that, at this point, no one completely understands how COVID-19 operates. This court is therefore in no position to make a definitive determination about Phillips's risk of reinfection.

The combination of Phillips's youth, lack of medical conditions placing her at identified risk of a severe case of COVID-19, lack of a severe case of COVID-19 when she did contract the disease, and the potential for having some form of immunity cannot be ignored in determining whether Phillips establishes extraordinary and compelling reasons warranting a reduction in her sentence.

The court next turns to an examination of factors set forth in § 3553(a), which is part of examining not only whether extraordinary and compelling reasons warrant a sentence reduction, but also of the court's analysis of the third compassionate release factor (whether early release is consistent with Sentencing Commission policy statements). Over and above Phillips's youth, lack of medical conditions, and the situation

at her camp, several factors favor release: 1) Phillips's criminal actions were nonviolent, see Presentence Investigation Report, ECF No. 262, PageID #s 1035-48; 2) Phillips has no history of violence, aside from pushing a victim in her attempt to get away when she was caught stealing from the victim's car, id., PageID #s 1051-54; 3) Phillips says she has only one prison disciplinary record for unauthorized communication with another inmate in 2013, see ECF No. 382, PageID # 1709, ECF No. 391-1, PageID # 1773 (indicating "mail abuse" in 2013); 4) Phillips is serving her sentence in a minimum-security satellite camp, see ECF No. 391, PageID # 1749; and 4) Phillips made attempts in prison to rehabilitate herself by taking educational programs, see ECF No. 382, PageID # 1709, ECF No. 382-1, PageID # 1712; ECF No. 35-11, PageID # 426.

On the other hand, there are several factors suggesting that early release should be denied.  At the time of Phillips's sentencing, this court determined that a 120-month sentence appropriately reflected the seriousness of her offense, promoted respect for the law, and appropriately punished her for her drug crimes, which involved significant amounts of drugs.  This was a below-guidelines sentence.  It was also below what the Government recommended.  Although Phillips does not have much time remaining on her sentence, she has not served the full sentence imposed. Phillips also has an extensive criminal record, which might show

that she could be a danger to the community if she is released and returns to criminal activity. *See* Presentence Investigation Report, ECF No. 262, PageID #s 1051-54. Of course, this court hopes that Phillips will lead a law-abiding life once released. This court is also troubled by the lack of a detailed release plan, as Phillips's motion only says that she should start her term of supervised release, *see* ECF No. 391, PageID # 1758, although she states in her Reply that she intends to live with her mother and daughter, *see* ECF No. 393, PageID # 1812.

Under § 3582(c)(1)(A), only extraordinary and compelling reasons can justify a reduction in an inmate's sentence. Having balanced the seriousness of Phillips's crime, the amount of time remaining on her sentence, her conduct while incarcerated, her criminal history, and the totality of the medical information she has submitted, this court determines that the reasons raised by Phillips, while important, do not rise to the level of being extraordinary and compelling such that a reduction in her sentence is warranted.

For the same reasons, Phillips has not satisfied § 3582(c)(1)(A)'s third requirement: she has not shown that release would be consistent with the Sentencing Commission's policy statements. Like the statute itself, the applicable policy statement indicates that a court may only reduce a term of imprisonment if extraordinary and compelling reasons support the

reduction.  *See* U.S.S.G. § 1B1.13.  Phillips has not made such a showing.

**III.     CONCLUSION.**

Phillips's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is denied.

It is so ordered.

DATED: Honolulu, Hawaii, January 15, 2021.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States v. Phillips*, Cr. No. 13-00021 SOM (04); ORDER DENYING DEFENDANT ROCHELLE PHILLIPS'S MOTION FOR COMPASSIONATE RELEASE